IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

                Plaintiff,

              vs.

RICARDO MENDOZA-MORALES,
OCTAVIO MENDOZA-MORALES,
HERIBERTO MONTENEGRO-MENDEZ,
HECTOR RICARDO VILLARUEL-LOPEZ,
OSCAR AGUIRRE,SANCHEZ,
JOSE NATIVIDAD RIOS-RUIZ,
JOSE SALINAS-CORREA, OMAR
VASQUEZ-CHAVEZ, and JESUS
FLORES-GARCIA,

                Defendants.
_____

CR 05-98-RE

OPINION

REDDEN, Judge:

      On January 25, 2006, I entered a minute order (doc. 343) denying six pending motions, indicating this opinion would follow:  The six motions are:

      (1)   Defendant Hector Ricardo Villarruel-Lopez's motion (doc.127) to suppress intercepted telephone conversations for failure to demonstrate necessity requirement;

      (2)  Defendant Hector Ricardo Villarruel-Lopez's motion (doc. 239) to reconsider denial of <u>Franks</u> hearing;

      (3)  Defendant Hector Ricardo Villarruel-Lopez's motion (doc. 224) for production of confidential informants for <u>Franks</u> hearing;

1 -    OPINION

(4)  Defendant Ricardo Mendoza-Morales's motion (doc. 168) to suppress;

(5)  Defendant Ricardo Mendoza-Morales's supplemental motion (doc. 169) to suppress; and

(6)  Defendant Octavio Mendoza-Morales's motion (doc. 167) to suppress intercepted communications.

On October 14, 2005, I held oral argument on these and other motions that were pending at the time.  I granted defendants' request to file supplemental briefs on the wiretap motions.

## Wiretap Motions

Defendants seek suppression of all evidence obtained from the communications intercepted by the government via a wiretap on the cellular telephone used by defendant, co-conspirator, and alleged ringleader Ricardo Mendoza-Morales.  The wiretap occurred during the course of an investigation initiated in June 2003 primarily by the Drug Enforcement Agency (DEA) into an alleged conspiracy to distribute methamphetamine.  That investigation lead to the indictment in this case.

The basic issue is whether the application and affidavit seeking authority to place the wiretap, which authority was granted by Judge Haggerty on February 18, 2005, supported Judge Haggerty's conclusions that probable cause existed and the wiretap was necessary to further the legitimate goals of the investigation.

**A.**  **Wiretap Application and Affidavit**.

The application for wiretap authority was supported by the 50-page affidavit of DEA Special Agent Jeff Poikey.  In his affidavit,  Agent Poikey described an extensive investigation into narcotics distribution that began in June 2003.  Agent Poikey's affidavit establishes that the drug organization under investigation was involved in distributing multi-pound quantities of methamphetamine and cocaine in the area of Hillsboro, Oregon. The organization had been identified as operating from Mexico through California, Oregon, and into Washington.  There were many participants although not all were known at the

time of the application for wiretap authority. Also not known at that time were the full extent of the customer base and the sources of supply.

In its application for the wiretap order, the government asserted that "[n]ormal investigative procedures have been tried and failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ." Application for Order, p. 5. Agent Poikey stated in his affidavit that, during the use of normal investigative techniques, the government had already gathered enough information to form probable cause to believe that several individuals, including defendants Ricardo Mendoza-Morales and Octavio Mendoza-Morales, were involved in a conspiracy to distribute methamphetamine.

The affidavit states that the wiretap was expected to intercept communications regarding the specifics of the offenses, including (a) the nature, extent, and methods of operation of the subjects' drug trafficking and money laundering enterprise; (b) the identities of the subjects, their accomplices, aiders and abettors, co-conspirators, and sources of supply; (c) the transportation, receipt, storage, and distribution of contraband and money involved in those activities, including other communications facilities; (d) the locations and items used in furtherance of those activities; (e) the existence and location of drug and money laundering records; (f) the location and source of resources used to finance their illegal activities; and (g) the location and disposition of the proceeds from those activities.

Agent Poikey explained that wiretapping was necessary because normal investigative techniques had allowed for only limited achievement of the following goals of the investigation:

1.    Obtain the identities of the drug suppliers and their associates;

2.    Obtain the identities of customers;

3.    Discover the means by which the conspirators are obtaining, transporting, delivering, and distributing drugs;

4.    Identify communication facilities, including residential, business, cellular, and pay telephones, voice mail systems, digital pagers, and facsimile machines, being used by the conspirators for their illegal activities;

5.　Determine dates, times, and places of narcotics deliveries, quantities of narcotics requested for purchase, and prices being paid for narcotics;

6.　Identify and locate the resources and assets being accumulated by the conspirators as a result of their illegal activities;

7.　Learn the locations at which the conspirators stored their contraband;

8.　Learn the whereabouts of books, records, ledgers, computer disks, telephone/address books, and other documents that support the existence of the conspiracy and the identities and roles of the conspirators;

9.　Develop admissible proof, beyond a reasonable doubt, of the intent of each participant to join the conspiracy and willingly participate; and

10.　Learn how and where Ricardo Mendoza-Morales and other conspirators distributed, invested, and/or maintained the financial proceeds from their illegal activities.

On February 18, 2005, Judge Haggerty granted wiretap authority to the government to place a wiretap on a single cellular telephone (that of Ricardo Mendoza-Morales) and no extensions were requested. Between February 18 and March 25, 2005, the DEA, via a wiretap, intercepted and monitored conversations from the cellular telephone used by Ricardo Mendoza-Morales. On the basis of the results of the wiretap, agents obtained a federal search warrant for eight residences and the vehicles at those residences.

## B.　**Applicable Law.**

Wiretap authorizations are controlled by the Omnibus Crime Control and Safe Streets Act (the Act), 18 U.S.C. §§ 2510-2522. The Act requires the government, in its application for a wiretap, to make "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c).

Together, §§ 2518(1)(c) and (3)(c) require a showing of necessity before a district court can issue a wire tap order." United States v. Carneiro, 861 F.2d 1171, 1176 (9th Cir. 1988). The necessity requirement is meant to limit use of wiretaps because of their intrusive nature where traditional investigative techniques would suffice. United States v. Martinez, 588 F.2d 1227, 1231 (9th Cir. 1978). Necessity must be apparent from the affidavit. Id. "[S]trict adherence" to section 2518 is required, and courts must exercise the

"utmost scrutiny" in determining whether the application conforms to the Act.  United States v. Blackmon, 273 F.3d 1204, 1207 (9th Cir. 2001).  Failure to comply with the necessity requirement warrants suppression of all evidence obtained from the wiretap as well as any derivative evidence obtained.  18 U.S.C. §§ 2515, 2518(10).

The court authorizing a wiretap has considerable discretion.  United States v. McGuire, 307 F.3d 1192, 1197 (9th Cir. 2002).  The application for wiretap authority must be denied unless it alleges specific circumstances that render normal investigative techniques particularly ineffective.  United States v. Gonzales, Inc., 2005 WL 1459569 at *7; United States v. Ippolito, 774 F.2d 1482, 1486 (9th Cir. 1985).  "The affidavit must show with specificity why in this particular investigation ordinary means of investigation will fail." Id. (emphasis in original).  Boilerplate conclusions that merely describe inherent limitations of normal investigative procedures are insufficient to establish necessity.  Gonzales, Inc. at 9 (citing United States v. Blackmon at 1210).

While a wiretap should not be the first step in an investigation, law enforcement agencies need not exhaust all conceivable alternative procedures before resorting to a wiretap.  Ippolito at 1486.  Rather, the government must show, and the issuing court must find, that "normal investigative techniques employing a normal amount of resources have failed to make the case within a reasonable period of time."  Id. (quoting United States v. Spagnuolo, 549 F.2d 705, 710 (9th Cir. 1977)).  In evaluating the showing of the government's good faith effort to use normal alternative means or its failure to use those means because of danger or a low probability of success, the reviewing court should use a standard of reasonableness.  Id.

Courts "must be careful not to permit the government merely to characterize a case as a 'drug conspiracy' . . . that is inherently difficult to investigate."  United States v. Ippolito, 774 F.2d at 1486 (quoting United States v. Robinson, 698 F.2d 448, 453 (D.C. Cir. 1983 (per curiam)).  Even so, the "government is entitled to more leeway in its investigative methods when it pursues a conspiracy."  United States v. McGuire, 307 F.3d at 1198.  The Ninth Circuit has said:

5 -    OPINION

Just as the punishment should fit the crime, so too the rigor of a government's investigation should fit the threat posed to society by criminals' elicit and coordinated plans. The principle we announce here – that the government has considerable latitude to wiretap suspected members of a criminal conspiracy, reflects a larger principle of proportionality embodied in the wiretap statute: the more grave the threat posed to our society the greater the government's leeway in pursuing it.

Id.

The need to investigate and identify all segments of a conspiracy, including participants, customer base, and supply sources, has been recognized by the Ninth Circuit as adequate necessity for a wiretap. McGuire at 1198. The Ninth Circuit has "consistently upheld findings of necessity where traditional investigative techniques lead only to the apprehension and prosecution of the main conspirators, but not to apprehension of other satellite conspirators." Id. (citing United States v. Torres, 908 F.2d at 1422). "The mere attainment of some degree of success . . . does not alone serve to extinguish the need for a wiretap." United States v. Bennett, 219 F.3d 1117, 1122 (9th Cir. 2000). A wiretap is particularly appropriate where it is needed "to learn the full extent of the operation." Bennett at 1122 (citing United States v. Bailey, 607 F.2d 237, 242 (9th Cir. 1979)).

A wiretap can be necessary if it gives the government the ability to develop an effective case. McGuire at 1198; see also United States v. Canales Gomez, 358 F.3d 1221, 1226 (9th Cir. 2004). An effective case is evidence of guilt beyond a reasonable doubt, not merely evidence sufficient to charge. McGuire at 1198. It is not simply the conclusion of an investigation with an indictment, but the successful prosecution leading to a conviction that is at the heart of an effective case. Id. It is not enough to simply develop some evidence through ordinary means; the government must be allowed to build an effective case with evidence of guilt beyond reasonable doubt. Canales Gomez, 358 F.3d at 1226.

Affidavits in support of wiretap authorizations are to be read in a common sense fashion. United States v. Bennett, 219 F.3d at 1122; United States v. Bailey, 607 F.2d at 241.

**C.  Discussion.**

I reject defendants' arguments that Judge Haggerty abused his discretion in concluding that the Poikey Affidavit fulfilled the necessity requirement for issuance of the wiretap authorization.  I reject the general proposition of defendants' arguments, express or implied, that investigating agents must exhaust every traditional investigative technique and witness before seeking wiretap authorization.  That decidedly is not the law in the Ninth Circuit.  The government need not exhaust every conceivable investigative technique in order to show necessity.  See, e.g., United States v. Canales-Gomez, 358 F.3d at 1225-26 (9th Cir. 2004); United States v. McGuire, 307 F.3d at 1196-97; United States v. Torres, 908 F.2d at 1422.  "[T]he wiretap statute does not mandate the indiscriminate pursuit to a bitter end of every non-electronic device."  United States v. Bennett, 219 F.3d at 1122.

The traditional investigative techniques used by law enforcement officers include physical surveillance, telephone information analysis, cooperating witnesses, interviews with associates, informants, use of grand jury, subpoenas, search warrants, trash pulls, and global positioning tracking devices. Defendants break their general arguments into categories of criticism of the Poikey Affidavit:   (1) it relied on boilerplate statements; (2) it omitted the government's successes with traditional investigative techniques; (3) it failed to state with specificity and particularity the reasons traditional methods of investigation would fail or had failed, or would prove to be too dangerous; (4) it relied on inherent limitations of traditional investigative methods; and (5) it chose to forgo several available methods of investigation based solely on Agent Poikey's and others' expectations in light of their experience.

Physical surveillance.  Defendants argue physical surveillance was neither unlikely to succeed nor too dangerous, and that the history of the investigation demonstrates that physical surveillance had been successful when done correctly.  Defendants assert the affidavit contained boilerplate statements about generic problems inherent in physical surveillance and unsupported generalized assertions.  Defendants assert that the instances where the affidavit speaks to the specific are belied by the facts, *i.e.*, that any counter

surveillance techniques that were utilized by suspects or defendants were not very effective.

I disagree. Agent Poikey discusses the extensive video surveillance done at the stash trailer. In the affidavit, Poikey summarized: "[M]embers of the organization arrived in their vehicles, park in the driveway of the stash trailer, and access the stash trailer. Agents observed that these individuals often retrieved items from the rear seat area of their vehicles and were seen carrying bags to and from the stash trailer." Poikey then goes on to name six specific members of the conspiracy who were seen coming and going as described. Unfortunately, defendants abandoned the stash trailer was abandoned in March 2004, 11 months before the wiretap application. The surveillance video camera was removed at that point. Abandonment of the stash trailer eliminated any further investigative value to be gained from continued surveillance.

Defendants have inappropriately extracted only small portions of the affidavit for focus. For example, the beginning of the paragraph on physical surveillance (Poikey Aff., p. 34) does talk generally about limitations inherent in physical surveillance. But then on the next page and a half Agent Poikey gives specific descriptions of the limitations of physical surveillance as they apply to this particular investigation.

Telephone information. Defendants argue the government has not demonstrated that continued telephone record analysis was unlikely to succeed. Defendants assert the affidavit offers only statements about generic problems inherent in telephone record analysis without discussing the specifics as to why this technique is insufficient in this particular case, or why a wiretap would compensate for the insufficiencies.

Defendants' criticisms are without merit. Agent Poikey's affidavit states that toll records, pen registers, and telephone trap and trace devices were and continued to be used in the investigation. He then explains that telephone information provides some circumstantial evidence, but fails to identify who the speaker is on any particular call or what was said. Agent Poikey also discusses that in this particular investigation, certain telephone numbers were subscribed to by people using fictitious names or prepaid phones

purchased without an address in the name of "Jane Doe."

I find no fault with Agent Poikey's explanation and application of the limitations of telephone information to this investigation. Although telephone information is not useless, it does not go far in identifying other conspirators, customers, and sources of supply.

Cooperating witnesses. Defendants argue the government has not demonstrated that using cooperating witnesses was unlikely to succeed or that it was too dangerous. Defendants argue the affidavit offered nothing more than statements about generic problems inherent in any use of cooperating  witnesses, without discussing the specifics as to why using additional cooperating witnesses was not feasible in this case. Defendants argue the investigation could have made productive use of certain cooperating witnesses such as Alicia Polich and Luis Lopez-Rojo.

I disagree. Agent Poikey states in his affidavit that cooperating witnesses were used and would continue to be used. He points out that, although useful, cooperating witnesses did not and cannot provide all the information needed to meet the objectives of the conspiracy investigation, such as transportation, frequency, and quantity of narcotics deliveries.  The affidavit discusses in some detail the limitations the investigation encountered in trying to use Polich and Lopez-Rojo as cooperating witnesses. The Ninth Circuit requires that the testimonies of cooperating witnesses be corroborated. United States v. Canales Gomez, 358 F.3d at 1227. While Polich and Lopez-Rojo provided good information, because they were likewise charged with their own crimes and were incarcerated, their testimonies needed to be corroborated as thoroughly as the investigation would allow. Further, a "review of a wiretap request must take into account the added difficulty, expense, and danger of using informants, especially those currently charged with crimes and in the custody of another jurisdiction." Id.

Interview of associates. Defendants  assert the government has not demonstrated that associate interviews were unlikely to succeed or too dangerous, and that the affidavit offered nothing more than unsupported statements about generic problems inherent in the use of associate interviews, without discussing the specifics as to why such interviews are

not feasible in this case.

I disagree.  Defendants quote only the opening lines of a paragraph and labels it mere "boilerplate conclusions" without noting the substance of the section in the remainder of the paragraph in which Agent Poikey discusses attempts made to interview associates. Agent Poikey's affidavit goes on, after he expresses his belief that interviews will associates will not be successful, to discuss this investigation in particular.  He identifies the particular associate he is referring to and lays out in some detail that the interview was unproductive.

<u>Informants</u>.  Defendants assert the affidavit uses the type of boilerplate conclusion that merely describes inherent limitations of normal investigative procedures and is thus insufficient to establish necessity.  Defendants also assert the use of informants in this investigation had been successful in gathering evidence of the alleged conspiracy and the affidavit makes conclusory statements about such things as that it was "unlikely MENDOZA-MORALES would ever divulge his sources of supply of narcotics, the details regarding the transportation, frequency and quantities of narcotics deliveries to these informants."  Poikey Aff. at p. 39.

Defendants' arguments are without merit.  The affidavit initially states that informants are insufficient to achieve the goals of the investigation because informants "are unable to penetrate the organization in a role other than as another buyer of methamphetamine for further distribution."  Poikey Aff. at p. 39.  Agent Poikey discusses CS#1, CS#2, and CS#3 and the fact that these informants were unable to penetrate the organization beyond the level of a mere buyer of narcotics.  He describes how informants were able to introduce an undercover agent to Hosvaldo Lopez, but were unable to introduce anyone to Mendoza-Morales or identify any source of supply.  Courts have acknowledged the limits of individual informants in broad investigations and have often upheld government requests for wiretaps when large scale organizations are under investigation.  <u>Canales Gomez</u>, 358 F.3d at 1125.  Any previous success from the use of confidential informants is even less persuasive in the context of an investigation of criminal conspiracy."  <u>Canales Gomez</u> at 1226 (citing <u>United States v. Torres</u>, 908 F.2d at 1417.

Use of the grand jury.  Defendants argue the affidavit recites generalized conclusory statements unsupported by any facts or circumstances particular to this case.  In the affidavit, Agent Poikey says that, based on his experience, he does "not believe that use of a federal grand jury can successfully achieve all of the objectives of this investigation." Poikey Aff. at p. 40.  Defendants object to Agent Poikey relying on his experience, and assert the affidavit lacks an explanation of how a wiretap would achieve objectives that the grand jury could not.

Defendants' criticism is without merit.  Agent Poikey explained in the affidavit that to use the grand jury at this stage of the investigation "would be unwise . . . [T]o seek immunity [through compelled testimony] . . . might foreclose a prosecution of the most culpable persons while alerting others as yet unknown members of the conspiracy to the nature and scope of the investigation."  Poikey Aff., p. 40.  "Grand jury subpoenas, to be productive, would necessarily involve granting immunity to the most culpable."  Bennett, 219 F.3d at 1122.

Subpoenas of financial records.  Defendants argue that the affidavit was insufficient regarding subpoenas for financial records because it was based on Agent Poikey's "training and experience, and his knowledge that "several Mexican drug trafficking organizations feel uncomfortable using U.S. banking institutions.  Poikey Aff. at p. 41.

Defendants' argument is without merit.  Agent Poikey discussed information acquired from the investigation that indicated that Mendoza-Morales utilizes vehicles to transport contraband, including bulk cash.  He states surveillance has been unsuccessful in locating any banks or other financial institutions being used by Mendoza-Morales or other individuals under investigation.  Agent Poikey could not have subpoenaed financial records because he knew of no financial institution upon which to serve it.

Search warrants.  Defendants argue Agent Poikey used mere "boilerplate conclusions" to justify a reluctance to use mass search warrants.  Defendants assert the

11 -    OPINION

affidavit fails to address the specifics of this particular investigation.

I disagree. In the affidavit, Agent Poikey explains in detail how search warrants have been both helpful and served to set back the investigation. Search warrants provided some good evidence but were insufficient to provide evidence necessary to determine the full scope of the criminal activity and the identities of co-conspirators operating at a higher level in the criminal enterprise and drug distribution systems. Agent Poikey states his opinion that one search warrant used in the investigation caused Mendoza-Morales to flee the United States to Mexico for a period of time, and that associates discontinued use of Mendoza-Morales's telephone when a search warrant was executed. The use of search warrants that may "alert the suspects to the ongoing investigation" justify the necessity for a wiretap as opposed to further search warrants." Bennett, 219 F.3d at 1122.

Undercover agents. Defendants argue that the affidavit failed to establish that a wiretap was necessary to locate suppliers of the alleged conspiracy based on their opinion that it is unlikely Ricardo Mendoza-Morales speaks to his suppliers on the telephone. Defendants assert a wiretap would likely be no more helpful in identifying suppliers than any of the traditional investigative techniques.

I disagree. Defendants' arguments are based on defendants' speculation. A wiretap is necessary if it gives the government the ability to develop an effective case, which means evidence of guilt beyond a reasonable doubt, not merely evidence sufficient to charge. McGuire at 1198.

Trash pulls. Defendants argue that necessity was not established because trash pulls were tried on only one occasion, and there was no discussion in the affidavit about why trash pulls were not attempted at the homes of other members of the alleged conspiracy or at other locations known to be used by the alleged conspiracy.

I disagree. Agent Poikey explains that one attempt to go through Mendoza-Morales's trash revealed no pertinent information and that he felt proceeding with additional trash pulls at Mendoza-Morales's residence could risk the possibility of him being alerted to the investigation. Agent Poikey properly used his judgment to not use the

technique again.

Global positioning system (GPS) tracking devices.  Defendants argue the affidavit failed to establish that GPS tracking devices were unlikely to succeed or be too dangerous.

I disagree.  Agent Poikey explains that he chose not to use GPS tracking devices on Mendoza-Morales's car because:  (1) Mendoza-Morales uses several different vehicles, making it "difficult to decide which vehicle to target"; (2) Agent Poikey was involved in three previous unrelated investigations where GPS tracking devices were found by the targets; and (3) installing a GPS device requires accessing the target vehicle in a covert manner. Poikey Aff. at p. 47.  Agent Poikey explains that trying to put GPS tracking devices on cars at the stash trailer would have been particularly dangerous because there was always a person in the trailer, even at night.

**D.      Minimization**.

Defendants argue the government failed to comply with the statutory requirements regarding minimization.  The wiretap statute requires that the government "minimize"" surveillance by not leaving the wiretap in place any longer than necessary to achieve the object of the authorization (or in any event longer than 30 days) and by conducting the wiretap in such a way as to minimize the interception of communications not otherwise subject to interception.  18 U.S.C. § 2518(5).

Defendants claim the government intercepted a high percentage of non-pertinent calls.  Even if it did, which I do not hold, the standard is that minimization must be objectively reasonable under the circumstances. Scott v. United States, 436 U.S. 128, 137-38 (1978) (no violation of minimization even though agents recorded all calls and made no attempt to minimize).  The Supreme Court explained:

> Many of the non-pertinent calls may be very short.  Others may have been one-time only calls.  Still other calls may have been ambiguous in nature or apparently involved guarded or coded language.  In all these circumstances agents can hardly be expected to know that the calls are not pertinent prior to their termination.

Id. at 140.  The Supreme Court has explained that there are circumstances, based upon the type of case, that could require the recording of practically all calls:  "For example,

13 -    OPINION

when the investigation is focusing on what is thought to be a widespread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise." Scott v. United States, 436 U.S. at 140. The mere interception of calls unrelated to the drug conspiracy does not indicate a failure to meet the minimization requirement. United States v. Torres, 908 F.2d at 1423.

I have reviewed defendants' descriptions of 17 specific calls that defendants assert were non-pertinent, and the government's justifications for each (which include explanations of coded language used by defendants in an attempt to make the calls sound unrelated to illegal activity). I conclude these calls were pertinent given the circumstances of this case.

At the evidentiary hearing, the government entered as an exhibit the minimization instructions given to call monitors at the beginning of the wiretap. That exhibit shows that the agents followed the procedures approved by the Ninth Circuit in United States v. Torres, 908 F.2d at 1423:

> The DEA adopted reasonable procedures to assure compliance with the minimization requirement. Monitoring agents were instructed on the requirements and need for minimization. They were also required to read and sign a typed copy of the minimization guidelines. Furthermore, a DEA agent and an Assistant United States Attorney made themselves available on a twenty-four hour basis for consultation.

Given the circumstances of this case, there were no violations of the minimization requirements. The government's interpretation and analysis of the calls were objectively reasonable under the circumstances.

## E.  Conclusion.

I have denied the wiretap motions. Judge Haggerty did not abuse his discretion when he made a finding of necessity and approved the wiretap order. The representations of Agent Poikey in his affidavit were sufficiently full and complete to establish the reasonableness of Agent Poikey's belief that, despite the use of traditional investigative techniques since the beginning of the investigation in June 2003 to the February 2005 request for wiretap authority, future reliance solely on these techniques appeared unlikely

to lead to successfully realizing the objectives stated in the application. The affidavit thoroughly disclosed that traditional methods had unearthed some information regarding the conspiracy. However, "the mere attainment of some degree of success during law enforcement's use of traditional investigative methods does not alone serve to extinguish the need for a wiretap." Canales Gomez at 1225 (quoting United States v. Bennett, 219 F.3d at 1122). The application satisfies the requirement that law enforcement officers attempt all traditional investigative methods that "easily suggest themselves are potentially productive and not unduly dangerous." United States v. Ippolito, 774 F.2d at 1486. In this case, the law enforcement officers, for an extended period of time beginning in June 2003 and continuing through the February 2005 request for a wiretap, took all reasonable and necessary steps using traditional investigative techniques before resorting to the wiretap application. The affidavit read as a whole also made it clear that without the wiretap, the investigators would not be able to penetrate the inner workings of the drug conspiracy or obtain information about the extended organization, such as other members, couriers, buyers, and suppliers.

Agent Poikey was not required to include in his affidavit each and every fact known to him concerning the investigation. Defendants' item-by-item attack on certain portions of Agent Poikey's affidavit is not helpful or a reasonable basis for analyzing whether necessity has been established. The "government is entitled to more leeway in its investigative methods when it pursues a conspiracy." United States v. McGuire, 307 F.3d at 1198. Many of defendants' attacks are based on their speculation and suppositions. The Ninth Circuit has adopted a "common sense approach" in which the reviewing court uses a standard of reasonableness to evaluate the government's good faith effort to use alternative investigative means or its failure to do so because of danger or low probability of success." Canales Gomez at 1225. Defendants have ignored the entire context and parameters of the investigation in order to pick out isolated items about which to complain. When one reads the affidavit as a whole in a "common sense fashion," it is clear that the necessity requirement was met.

**<u>Franks Hearing</u>**

I have found Agent Poikey's affidavit and the application to be facially sufficient to meet the necessity requirement.  Therefore, defendants assert they should be permitted a hearing under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), because the Poikey Affidavit contains intentional or reckless material misstatements or omissions.

Under <u>Franks v. Delaware</u>, a defendant may challenge a facially sufficient affidavit for a search warrant on the ground that the police knowingly, intentionally, or recklessly included material false information.  <u>Id.</u> at 155-56.  A defendant is entitled to an evidentiary hearing regarding the veracity of an affiant if he can make a substantial preliminary showing that the affidavit contained intentionally or recklessly false statements, and that the affidavit purged of its falsities would not be sufficient to support a finding of probable cause.  <u>United States. v. Meling</u>, 47 F.3d 1546, 1553 (9th Cir. 1995).

A defendant must satisfy five requirements in order to be entitled to a <u>Franks</u> hearing:  (1) the defendant must allege specifically which portions of the affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; and (5) the challenged statements must be necessary to finding probable cause.  <u>United States v. Perdomo</u>, 800 F.2d 916, 920 (9th Cir. 1986); <u>United States v. Kiser</u>, 716 F.2d 1268, 1271 (9th Cir. 1983).

Thereafter, if the court determines that an application contains material misstatements or omissions, the court must determine the true facts in an evidentiary hearing to determine whether a reasonable district court judge could have denied the application because necessity for the wiretap had not been shown.  <u>United States v. Ippolito</u>, 774 F.2d at 1485-87.

On October 7, 2005, I entered an order denying defendants' requests for a <u>Franks</u> hearing.  Thereafter, on October 13, 2005, counsel for defendant Villarruel-Lopez filed a

motion for reconsideration of my denial of a <u>Franks</u> hearing.  I delayed my ruling on the motion for reconsideration pending completion of the post-hearing supplemental briefing requested by defendants.  I now deny the motion for reconsideration.  After reviewing the new allegations and exhibits in defendants' supplemental memorandums, I conclude my initial denial of the motion for a <u>Franks</u> hearing was correct.

In its supplemental filings, defendants make numerous allegations that Agent Poikey intentionally or recklessly made material misstatements and omissions in his affidavit. Some, such as the Beavercreek garage and the fugitive status of Alvarado-Colin, have been discussed above.  Others are discussed below.

As to cooperating witness Lopez-Rojo, defendants assert Agent Poikey lacks veracity when he says he could not use Lopez-Rojo was a cooperating witness because he was an illegal alien.  I disagree.  Agent Poikey has explained that Lopez-Rojo's significance to the investigation was a phone call to Ricardo Mendoza-Morales indicating he would deliver some money to Mendoza-Morales as part of a narcotics debt.  This would have to have been done immediately.  Agent Poikey's affidavit explains that DEA training is that illegal aliens cannot be used in such a capacity without approvals of high-ranking officials in both the DEA and the Department of Justice. Agent Poikey also explains that there was insufficient time for him to try to obtain a S-Visa for Lopez-Rojo given the need for immediate action.

Defendants assert Agent Poikey made a "false statement" when he failed to characterize the Beavercreek garage as another stash location rather than a mere garage. I disagree.  Agent Poikey stated in his affidavit that on one occasion they observed Ricardo Mendoza-Morales leave his residence in one car, drive to the Beavercreek garage, swap the car with the car in the garage, return to his residence in the second car, and at his residence leave in yet a third car.  This is hardly enough information to base a conclusion that the garage was a "stash location," and Agent Poikey correctly did not do so.

Defendants assert Agent Poikey deliberately misstated that Julio Alvarado-Colin was a fugitive.  I disagree.  Agent Poikey explains that Alvarado-Colin was charged in

December 2004 and arrested in April 2005. Neither he nor other law enforcement officers who were looking for him knew his whereabouts. Agent Poikey applied for wiretap authority in February 2005, which was after Alvarado-Colin was charged but before he was arrested. It was no misstatement to refer to Alvarado-Colin as a "fugitive" at the time of the wiretap application.

Defendants assert Agent Poikey deliberately misled Judge Haggerty in his statement that Lopez-Gamez, when confronted by law enforcement agents, attempted to use a weapon to avoid arrest. I disagree. Defendants point to one police report that said Officer James pulled his badge by the chain to display it, and another that said "the subject saw the badge around his neck." Lopez-Gamez then turned, drew a small handgun, and pointed it at officer James. Agent Poikey's statement in his affidavit is that Officer James verbally announced he was a police officer. Apparently from this contradiction in how Officer James let Lopez-Gamez know he was a police officer, defendants argue for a conclusion that Lopez-Gamez had no idea who he was trying to kill and that Agent Poikey recklessly or deliberately withheld that fact from Judge Haggerty.

Defendants argue it was a material misstatement of the danger of the conspiracy to rely on the Lopez-Gamez incident because that incident "remains unclear." I disagree. Agent Poikey included this incident in his affidavit to show that Lopez-Gamez was dangerous, the organization was dangerous, and members of the organization were willing to shoot people, whether they say out loud "police officer" or whether they display a badge. In the paragraph labeled "Danger" in the affidavit, Agent Poikey states that Lopez-Gamez not only possessed a weapon during a drug delivery, but when confronted by law enforcement agents, attempted to use the weapon to avoid arrest. This made him dangerous. Defendants also assert Agent Poikey recklessly excluded the fact that Officer James was potentially using methamphetamine on the day of the incident. This

information could not have been material to an incident where an individual drew a weapon and attempted to fire on another.

Defendants assert it was a material omission to leave out information on five informants working with Detective LaMonica and three confidential informants in Kalama, Washington. I disagree. Agent Poikey's affidavit did not, and need not, include every detail of his investigation, let alone other investigations. In his affidavit, Agent Poikey discusses informants and confidential sources. He concludes they could not penetrate the organization other than the level of another buyer of methamphetamine for further distribution. He discusses CS #1, #2, and #3 who were helpful in identifying lower level distributors of the organization but were never introduced to Mendoza-Morales. I agree with the government that any sources identifying the main conspirators as "suppliers" would be de minimis in light of the detailed results obtained from the central thrust of the investigation. The omission of this material from the affidavit was not material because in my judgment it would not have affected the necessity conclusion.

Defendants assert it was a material omission not to include the details of the video surveillance and the fact that over 15 vehicles and witnesses were observed at the stash trailer. Defendants argue Agent Poikey should have discussed other potential witnesses, stash vehicles (such as a "Dark Taurus"), and enduring leads. I disagree. The affidavit does describe many observations made at the stash trailer, and delineates several "stash vehicles" that were uncovered by traditional investigative techniques. Agent Poikey was not required to pursue every potential person who entered the stash trailer in order to establish necessity. United States v. Bennett, 219 F.3d at 1122 (government need not exhaust every conceivable technique in order to show necessity).

Defendants argue it was a material misstatement when Agent Poikey said Marcos Mendoza-Morales did not ever cooperate after his arrest. I disagree. Marco Mendoza-Morales was arrested by Los Angeles police in July 2003 while transporting 21 pounds of methamphetamine. At the time of his arrest, Marco Mendoza-Morales told the police if they let him go free, he could lead them to another 100 pounds of methamphetamine. The police declined, such an offer being unreasonable and far outside the parameters of an acceptable offer. Thereafter, during his incarceration, plea, and

sentencing proceedings, Mendoza-Morales never cooperated with police. The one unreasonable and unacceptable offer by Mendoza-Morales at the time of his arrest does not make a falsehood out of Agent Poikey's statement that Mendoza-Morales never cooperated.

Defendants argue it was a material omission for Agent Poikey to not mention a 45-minute audiotape of a conversation between Mendoza-Morales and a woman that occurred in the back of the patrol car. I disagree. Agent Poikey states he was unaware of the audiotape; he admits there was a mention of it in one of the police reports, but he failed to notice it. Defendants assert the tape may have identified leads with co-defendant Vasquez and "Negro." However, Agent Poikey's affidavit explained that Vasquez had been identified without reference to the audiotape, and pen-link phone toll analysis and surveillance had been focused on him. In addition, Vasquez was also known as "Negro." The audiotape would add nothing to the affidavit, even if Agent Poikey had known about it.

Defendants assert Agent Poikey recklessly or intentionally misstated that phone had been subscribed and registered in the names of others. I disagree. Some co-conspirators did register phones in their own names, but the affidavit provides specific examples of names and phone numbers that are registered to individuals other than the user.

Defendants are not entitled to a <u>Franks</u> hearing. Defendants have combed through the affidavit and application in search of minutiae. They have not made the required substantial preliminary showing or offer of proof that could lead to a conclusion that the affiant, Agent Poikey, made deliberate or reckless false statements or omissions that were

material to the finding of probable cause and necessity. The challenged statements are not necessary to a finding of probable cause or necessity.

Dated this 7th day of February, 2006.

                                    /S/ James A. Redden
                                    James A. Redden
                                    Senior U.S. District Judge