IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                    05-98-01-RE
                                             05-98-02-RE
                    Plaintiff,
v.                                           OPINION AND ORDER

OCTAVIO MENDOZA-MORALES,
RICARDO MENDOZA-MORALES,

                    Defendants.

REDDEN, Judge.

        Defendants are charged in a Second Superseding Indictment on one count of

conspiracy and nine counts of possession with intent to distribute methamphetamine,

cocaine, or heroin.  During the DEA's investigation of this case, Judge Haggerty issued

a Title III Wiretap Order authorizing the government to place a wiretap on the cell-

phone of the alleged ringleader, Ricardo Mendoza-Morales.

        Defendants requested a Daubert evidentiary hearing to challenge scientific and

1 - OPINION AND ORDER

technical procedures used by the government to carry out the wiretap.  The court conducted the hearing on November 7, 2007.

Defendants challenge the reliability of the methods used by the government to identify the callers' and receivers' telephone numbers, to translate and interpret the conversations, and  to determine the location of the callers when the calls were made.

Specifically, defendants challenge the effectiveness of pen registers that record the telephone number of the outgoing call, trap and trace devices that record the telephone number of the incoming call, and cell phone tower locator systems that locate approximately where the outgoing call was made.  They also challenge the reliability of the Translation and Transcription Support Services (T2S2) equipment and biometrics used for voice identification.  Finally, defendants challenge the qualifications of the technicians who operate the above equipment and interpret the information received.

## DAUBERT STANDARDS

Trial judges are tasked "with ensuring that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The gatekeeping role exercised by district courts entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is ... valid and of whether that reasoning or methodology properly can be applied to the facts in issue. Id. at 592-93. This role applies to all expert testimony, not only to scientific expert testimony. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147(1999).

## HEARING TESTIMONY

At the hearing, the court heard from six witnesses.

Steve Carnaphan - DEA Special Agent.

Agent Carnahan is an 11-year veteran of the DEA. He has spent the last three years providing technical assistance in cases involving electronic surveillance, including wiretaps that use pen registers, trap and trace devices, and cell tower tracking. He has received a total of six weeks training from the agency's science and technology division, and receives specialized training from the vendors of the electronic equipment the agency uses. He is a member of the North American Technical Investigators Association.

Agent Carnaphan set up the wire room and the Title III JSI Voice Box system used in this case to wiretap defendants' telephone conversations. He tested the system to insure it was operating properly. He testified that although it has now been replaced by a decentralized system, this particular system is "very user friendly" and "very reliable for the most part." The system was "in the loop long before [he] became a tech agent."

Cathy Robinson - DEA Special Agent.

Agent Robinson is a pilot for the DEA. She was the wire room coordinator for the wiretaps in this case. Her major responsibility was to understand and pass on information from the monitors based on her knowledge of the case. She testified there were minimal problems with the equipment during the wiretap operation, such as when the wiretap's computer would lock up, requiring a reboot. She does not recall any major complaints or concerns from the monitors who listened to and translated the wiretapped

3 - OPINION AND ORDER

conversations.  The wiretap system appeared to work as designed.

Jose Hermasillo - Spanish Speaking Translator/Linguist.

Mr. Hermasillo is an independent contractor retained by the DEA as a Spanish translator linguist monitor.  He grew up in a Spanish-speaking family.  Neither of his parents spoke English.  He has translated and interpreted wiretapped telephone conversations for the DEA in approximately 15 cases over the past five years.  Before that, he worked for 10 years translating medical records.

Hermasillo was one of three monitors who listened to live, intercepted wiretapped telephone conversations.  He has no technical training or specialized knowledge of the equipment he used to listen to the conversations.  He is certified as a state court interpreter/translator of Title III wiretaps in California.  He has worked on wiretaps involving the Voice Box system "about four times."  He testified the quality of the recording system, which he used to play back conversation "worked very well" and "[f]or the most part conversation was audible and [he] was able to understand it."  He listened to the same recorded telephone calls on multiple occasions and found there was no distortion or discrepancy between those conversations and conversations occurring in real time.

J.C. Mora - Spanish Speaking Translator/Interpreter.

Mr. Mora learned Spanish growing up in Costa Rica. He has no certifications as an interpreter/translator and was trained on the Voice Box system by other monitors, but not by the vendor.  He worked as a monitor on wiretap cases for 11 years.  He has also worked as an interpreter for CIGNA, Paramount Pictures, and "a slew of other companies."

4 - OPINION AND ORDER

Robert Bentsen - DEA Intelligence Research Specialist.

Robert Bentsen consumes and analyzes data received on wiretaps from pen register and trace and trap devices. He reviewed more than 700 telephone calls and was able to verify there was a "gap in data" for only six calls that, for no apparent reason, did not appear on a pen/trap record for the target telephone despite appearing on telephone bills.

Julio Brown - Sr. Radio Frequency Engineer for T-Mobile USA, Inc.

Julio Brown is the lead engineer for T-Mobile in the Portland area. He verifies the accuracy of latitude and longitude records for cell towers that are able to show the general vicinity of a cell phone and recreate the movement of that cell phone as calls are made from it to "a very high degree of accuracy."

## DISCUSSION

As an initial matter, the court agrees with the government's contention that the issues raised by defendants, at least as to the DEA wiretap program, do not concern the validity of expert opinions under Daubert, but relate solely to the qualifications of the witnesses presented by the government who set up the wiretap operation, listened to and translated the wiretap recordings, and interpreted data. The government contends the evidence presented by these witnesses must only satisfy the requirements of Fed. R. Evid. 104(a) regarding the "qualification of a person to be a witness." In this case the DEA witnesses testified as to the mechanics of the wiretap operation, and the results obtained. The agents testified as to the reliability of the equipment that was used in the operation, and the monitors testified as to their experience as translators/interpreters and their ability to hear and understand the telephone

5 - OPINION AND ORDER

conversations that were wiretapped. The government established that the wiretap operation accurately captured more than 99% of all telephone calls wiretapped.

On this record, the court finds the government sustained its burden of establishing the admissibility of the wiretap evidence. To the extent there is a discrepancy in the records regarding the six "missing" telephone calls, the discrepancy, at best goes to the weight to be given to the evidence, not its admissibility. U.S. v. Moran, 493 F.3d 1002, 1011 (9th Cir. 2007).

The only remaining issue that potentially addresses Daubert concerns is the adequacy of the government's evidence regarding the particular location of persons at the time they made cell phone calls. I conclude the testimony of Julio Brown clearly established his knowledge in this area and the sufficiency of his opinion regarding the technology and methodology that was available to and used by the government to accurately track the location of those phone calls within reason limits. Accordingly, I am satisfied that Brown's testimony more than met any Daubert concerns.

For these reasons, the court finds the government's wiretap evidence and evidence of the location of telephone calls is admissible.

IT IS SO ORDERED.

DATED this 12 day of December, 2007.

James A. Redden
Sr. United States District Judge

6 - OPINION AND ORDER